UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IAN WRIGHT, : | |
|     Plaintiff, : | |
| : | |
| v. : | NO. 3:16-cv-1179 (SRU) |
| : | |
| DANNEL P. MALLOY, et al., : | |
|     Defendants. : | |

INITIAL REVIEW ORDER RE SECOND AMENDED COMPLAINT

    Ian Wright filed an amended complaint in accordance with my Order on September 23, 2016.  On November 9, 2016, Wright filed a second amended complaint ("SAC").  The SAC appears to be identical to the first amended complaint, with the exception of some additional language that was added to the jurisdictional statement.

    Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, a plaintiff must seek the opposing party's written consent or leave of the court to file a second amended complaint.  Nonetheless, I will construe the SAC as a request to file an amended complaint, and I will grant it.  In the event that Wright ever wishes to further amend his complaint, he must first seek the defendants' written consent or leave of the court.

    In the SAC, Wright challenges the requirement that he participate in the Offender Accountability Plan ("OAP") and Risk Reduction Earned Credit ("RREC") programs, even though he is ineligible to earn RREC credits and he is ineligible for a deportation parole of aliens hearing or eligibility determination.  Within the body of the SAC, Wright identifies the defendants as Dannel P. Malloy, Scott Semple, Charlton J. Giles, Henry Falcone, David Egan, John Doe District Administrator and John Doe Division Administrator.

    Under section 1915A of Title 28 of the United States Code, I must review prisoner civil

complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.    <u>Allegations</u>

On October 15, 2000, Wright was arrested on charges of murder and carrying a pistol without a permit. He was convicted and, on March 22, 2002, sentenced to a total effective term of imprisonment of 35 years. He has been confined in the custody of the Connecticut Department of Correction since that time.

Because Wright was convicted of murder after July 1981, Conn. Gen. Stat. §§ 18-98e and 54-125a, provide that he is ineligible for: Risk Reduction Earned Credit ("RREC"), a parole hearing, and release on parole. Wright is a Jamaican national and was ordered deported on

2

September 13, 2013.  Wright contends that under Conn. Gen. Stat. § 54-125d(c), he should be eligible for a Deportation Parole of Alien hearing after serving 75 percent of his sentence.

The Department of Correction required that an Offender Accountability Plan ("OAP") be developed with each inmate.  The OAP is designed to identify and address specific areas the inmate needs to address to successfully reintegrate with the community.  Wright contends that the OAP is inapplicable to him because he will not be reentering the community in the United States.

Wright has been threatened and punished by staff members for refusing to participate in the OAP and RREC procedures.  Wright has refused to participate because he is ineligible for RREC and will not be released in the United States.

In February 2016, a unit counselor at Garner Correctional Institution told Wright that he would have to submit a DNA sample even though he did not earn RREC and had been ordered deported.  Wright was told that he would be punished if he failed to comply.  Wright addressed his concerns to defendant Falcone who said that the policy was mandatory for all inmates.

In March 2016, Wright was informed by counselor Ligon that he had been selected to participate in the Threshold program and that his participation was mandatory.  Wright informed counselor Ligon that defendant Falcone had told him that the OAP and RREC policies did not apply to him because he did not earn RREC and had been ordered deported.  Counselor Ligon stated that she would contact defendant Falcone.  Wright also wrote to defendant Falcone to remind him of their previous conversation.

On April 6, 2016, Wright received a response from counselor supervisor WynKoop, to whom Wright's request to defendant Falcone had been referred.  The counselor supervisor told

3

Wright that, if he refused to participate in the program, he would be issued a disciplinary report. The disciplinary report was issued on May 3, 2016. At the hearing, Wright stated that he would participate in the program if he was made eligible for RREC and parole.

On May 11, 2016, Wright was found guilty of refusing an institutional program. He was sanctioned with 25 days' forfeiture of RREC. When he questioned the sanction, Wright was told that if the law changed and he became eligible for RREC, the sanction would be applied. Wright received an additional sanction of two years' loss of contact visits and ineligibility for institutional programs like prison jobs or picture taking. The guilty finding was upheld on appeal.

On May 25, 2016, Wright sent correspondence to defendant Semple seeking a deportation of alien parole hearing. Counselor Griggs responded to the letter informing him that he would be eligible for deportation parole of aliens in April 2017, after he served fifty percent of his definite sentence. On May 11, 2016, Wright sent a letter to Erika Tindill, the former chairperson of the Board of Pardons and Paroles seeking information about a deportation of alien parole hearing or eligibility. He has not received a response.

On May 9, 2016, Wright sent a letter to John DeFeo of the Board of Pardons and Paroles regarding the OAP and RREC policies. He has not received a response. On June 27, 2016, Wright sent a Freedom of Information request to the Board of Pardons and Paroles seeking information on the regulations regarding deportation parole of aliens. A staff member informed him on July 1, 2016, that he was reviewing the request and would contact him. Wright has not yet received a response.

Wright submitted a request to the Sentence Calculation and Interstate Compact Unit of the Department of Correction asking about his inability to earn RREC and his parole ineligibility. He sought any documents showing why prisoners who are not eligible for parole and do not earn RREC must comply with OAP and RREC program recommendations. He has not received a response.

On May 11, 2016, Wright sent a letter to defendant Malloy regarding a deportation of alien parole hearing. He has not received a response.

II.     Analysis

Wright includes nine counts in his SAC: (1) defendants Malloy, Semple and Giles violated his Fifth and Fourteenth Amendment rights by denying him RREC, parole eligibility or a parole hearing; (2) defendants Malloy, Semple and Giles violated his Eighth Amendment rights by denying him RREC, parole eligibility or a parole hearing; (3) defendants Malloy, Semple and Giles violation various sections of the Universal Declaration of Human Rights by denying him RREC, a parole hearing or parole eligibility; (4) defendants Semple, Falcone, Egan and Does violated his Fifth and Fourteenth Amendment rights by implementing the OAP and RREC policies and procedures; (5) defendants Semple, Falcone, Egan and Does violated his Eighth Amendment rights by implementing the OAP and RREC policies and procedures; (6) defendants Malloy, Semple, Falcone, Egan and Does violated various sections of the Universal Declaration of Human Rights by implementing the OAP and RREC policies and procedures; (7) defendants Malloy, Semple and Giles violated his Fifth and Fourteenth Amendment rights by denying him a deportation parole of alien hearing or eligibility regulations; (8) defendants Malloy, Semple and Giles violation his Eighth Amendment rights by denying him a deportation parole of alien

5

hearing or eligibility regulations; and (9) defendants Malloy, Semple and Giles violated various sections of the Universal Declaration of Human Rights by denying him a deportation parole of alien hearing or eligibility.

  A. <u>Violation of the Universal Declaration of Human Rights</u>

Wright contends that the defendants violated Articles 1, 2, 3, 5, 6, 7, 9, 28, 29 and 30 of the Universal Declaration of Human Rights. Although that document possesses "moral authority," it does not "impose obligations as a matter of international law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (explaining that the Universal Declaration of Human Rights is an international agreement that does not give rise to legal obligations because it is merely a "statement of principles"); *see also Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 262 (2d Cir. 2003) (Universal Declaration of Human Rights is non-binding on the United States). Other circuits and courts within the Second Circuit have held that the Universal Declaration of Human Rights does not provide a basis for a section 1983 claim. *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) ("[T]he Universal Declaration of Human Rights is a nonbinding declaration that provides no private right of action."); *Huynh Thi Anh v. Levi*, 586 F.2d 625, 629 (6th Cir. 1978) ("[I]t does not appear that the Geneva Convention or the Declaration of Rights are in fact treaties in force in the United States."); *Chinloy v. Seabrook*, 2014 WL 1343023, at *4 (E.D.N.Y. Apr. 3, 2014) (citing cases). All claims for violation of the Universal Declaration of Human Rights, counts three, six and nine, are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

  B. <u>Deportation Parole of Alien Hearing and Eligibility</u>

Wright argues that the defendants have violated his Fifth, Fourteenth and Eighth Amendment rights by denying him a deportation parole of alien hearing or eligibility for such a hearing. Wright alleges, however, that Counselor Griggs informed him that he is eligible for a deportation parole of alien hearing in April 2017 and that he is eligible for deportation parole when he completes serving fifty percent of his sentence. Amended Compl. at ¶ 36 (doc. # 56). As Wright's allegations demonstrate, he has not been denied a hearing or eligibility for deportation parole. Thus, there is no factual basis for his claims. All claims that Wright has been denied deportation parole or eligibility, counts seven and eight, are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

    C.    <u>Denial of RREC and Parole, and Forced Participation in OAP and RREC Programs</u>

Wright argues that the defendants have violated his Fourteenth Amendment rights to equal protection and due process as well as his Eighth Amendment rights by denying him RREC and parole eligibility because he was convicted of murder after 1981. Wright also alleges that those same rights have been violated by his forced participation in the OAP and RREC programs for which he is ineligible to receive any credit.

To state a claim for denial of due process, Wright must show that he had a protected liberty interest and, if he has such an interest, that the defendants deprived him of the interest without affording him due process of law. *See Sandin v. Conner*, 515 U.S. 472 (1995). Wright has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 81 (2d Cir. 2000).

7

Inmates have no constitutionally protected liberty interest in parole, or other conditional release from prison, prior to the expiration of a valid sentence. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Although the Connecticut legislature has enacted statutes concerning parole eligibility or RREC, these statutes are expressions of the granting or withholding of legislative grace. *See State v. Andrews*, 253 Conn. 497, 512-13 (Conn. 2000) (noting that ineligibility for parole was not a consequence of a guilty plea but "a consequence of the withholding of legislative grace" (citations omitted)); *Magee v. Commissioner of Correction*, 105 Conn. App. 210, 218 (2008) ("Good time credit is a creation of legislative grace." (quoting *Mitchell v. Commissioner of Correction*, 94 Conn. App. 210, 213 (2006), *cert. denied*, 278 Conn. 917 (2006)). Matters of legislative grace do not create protected liberty interests. *See Kerry v. Din*, ___ U.S. ___, 135 S. Ct. 2128, 2136 (2015) (noting that action of Congress showing concern for unity and happiness of immigrant families is matter of legislative grace, not fundamental right); *Curtis v. Pataki*, 1997 WL 614285 (N.D.N.Y. Oct. 1, 1997) ("[t]he legislature's decision to grant certain inmates good time credits 'is a matter of legislative grace' and does not create a fundamental right"). Absent a protected liberty interest in early release, Wright cannot state a due process claim based on the denial of parole eligibility or RREC.

Similarly, Wright does not have a protected liberty interest to be free from the consequences of his failure to participate in certain prison programs. The Supreme Court has long recognized the "need to grant necessary authority and capacity to federal and state officials to administer the prisons." *McKune v. Lile*, 536 U.S. 24, 37 (2002) (citing *Turner v. Safely*, 482 U.S. 78 (1987)). A court "must exercise restraint in supervising the minutiae of prison life." *Id.*

(quoting *Turner*, 482 U.S. at 84-85).  For that reason a prisoner may not bring a due process claim challenging his conditions of confinement unless such conditions constitute "atypical and significant hardship[s] on [inmates] in relation to ordinary incidents of prison life."  *Id.* (quoting *Sandin*, 515 U.S. at 484).

There is nothing in the SAC that can be construed as an allegation that participation in the OAP or RREC program places an unusual or significant hardship on Wright.  Furthermore, he does not allege that his punishment for refusal to participate in the programs is a significant hardship in relation to the ordinary incidents of prison life.  Without more, mere allegations of discipline are insufficient to establish a due process violation.  *See McKune*, 536 U.S. at 39-40 (transfer to a less-desired facility, loss of access to prison organizations and gym area, reduction in pay opportunities and canteen privileges, and restricted visitation rights did not place a significant hardship to constitute due process violation); *Sandin*, 515 U.S. at 486 (solitary confinement for thirty days not due process violation).

Wright also contends that the defendants violated his right to equal protection of the laws.  The Equal Protection Clause protects prisoners from invidious discrimination.  This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).  Prisoners are not a suspect class.  Nor is the right in question a fundamental right.  Thus, I am not required to apply strict scrutiny.  *See Vacco v. Quill*, 521 U.S. 793, 799 (1997).  I must determine only whether there is a rational relationship between the state statute and a legitimate state objective.  *See Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993).  The rationale for the

statute need not be articulated by the legislature. It is sufficient "if there is any reasonably conceived state of facts that could provide a rational basis for the classification." *Id.* at 320.

To state an equal protection claim, Wright must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Wright is challenging the parole and RREC eligibility statutes. He is denied eligibility because he committed murder after 1981. Wright states that the classification is based on his crime. The Second Circuit has held that safety of the community constitutes a rational basis for parole eligibility determinations. *See Harris v. Travis*, 175 F.3d 1007 (2d Cir. 1999) (citing *Romer*, 517 U.S. at 631). Because there is a rational basis for the statute, Wright's equal protection claim fails.

Wright also challenges the policies and procedures that require him to participate in the OAP and RREC programs. The basis for that challenge is that he is treated differently because, unlike the other participants, he is forced to participate in the program but is not eligible receive any benefits in return. That amounts to no more than an allegation that he is treated differently from other inmates on account of his crime of conviction or that it is substantively unreasonable to require him to participate in programs for which he obtains no apparent benefit. I have already addressed both claims and they fail for reasons already stated.

Wright also could assert an equal protection claim based on a "class of one" theory. To state a valid claim, Wright must allege first that he was intentionally treated differently from others who are similarly situated. Second, he must allege facts showing that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Wright must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical." *Neilson v. D'Angelis*, 409 F.2d 100 (2d Cir. 2005), *overruled in part on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008).

Wright does not compare himself to any other inmate. Instead, he states that, by statute, he is treated differently from inmates who committed qualifying felonies, such as murder, before 1981. Wright does not compare himself with a "prima facie identical" person. Thus, any class of one equal protection claim fails.

Finally, ineligibility for parole, denial of RREC, and the forced participation in the OAP and RREC programs does not constitute cruel and unusual punishment in violation of the Eighth Amendment. As I explained above, Wright has no constitutional right to RREC or parole, or to be free from participation in those programs. The denial of RREC and parole serve only to require Wright to serve his entire sentence. The participation in the OAP and RREC programs serve only to require Wright to follow the directives of the prison administrators. Neither requirement violates the Eighth Amendment. *See, e.g.*, *McKune*, 536 U.S. at 37 (Supreme Court unwilling to involve itself in the minutiae of prison administration); *Woodruff v. Illinois Dep't of Corrections*, 2009 WL 1851101, at *3 (S.D. Ill. June 26, 2009) (denial of parole eligibility does

11

not state Eighth Amendment claim). Wright's claims in counts one and two are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

III.     Conclusion

For the foregoing reasons, all claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The dismissal is with prejudice because Wright has been afforded multiple opportunities to amend his complaint. Because the claims are dismissed, Wright's other pending motions for discovery and for access to case research materials are denied as moot. The Clerk shall enter judgment in favor of the defendants and close the case.

**SO ORDERED.**

Dated this 6th day of December 2016, at Bridgeport, Connecticut.

    /s/STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge